Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,**<br>        **Plaintiff,**<br><br>    **v.**<br><br>**JAMAR FELTON,**<br>        **Defendant.** | **Criminal No. 17-0469 (ES)**<br><br>**OPINION** |

SALAS, DISTRICT JUDGE

Before the Court is defendant Jamar Felton's motion for compassionate release (D.E. No. 34 ("Motion")).  The Government opposes the Motion.  (D.E. No. 36 ("Opp. Br.")).  The Court has considered the parties' submissions and conducted oral argument on the Motion.  For the following reasons, the Court GRANTS the Motion.

## I.    BACKGROUND

On August 5, 2017, Felton was arrested and initially charged by the State of New Jersey for unlawful possession of a firearm and possession of marijuana.  (Motion at 2).  The firearm charge was taken over by the federal government, and the state dismissed its charges; however, the arrest also led to a state parole violation.  (*Id.* at 2–3).  In October 2017, the New Jersey State Parole Board ("Parole Board") revoked Felton's supervision status and established a 12-month future eligibility term.  (*Id.* at 3).  Shortly thereafter, Felton pled guilty to the federal charge of being a felon in possession of a firearm.  (D.E. Nos. 19 & 20).  Based on a total offense level of 21 and a criminal history category of IV, Felton was subject to a guidelines range of 57 to 71 months of imprisonment.  (D.E. No. 29 ("Sentencing Tr.") at 4:18–22).  On July 26, 2018, the Undersigned varied below the guidelines range and sentenced Felton to 39 months of

imprisonment to be followed by three years of supervised release.  (D.E. No. 27, Judgment at 2–3).  Felton's sentence was to run consecutively to any state sentence.  (*Id.* at 2).

Because Felton was in state custody since his arrest on August 5, 2017, he had served nearly the full 12 months of his future eligibility term by the time this Court sentenced him on July 26, 2018.  (Motion at 4).  Felton thus expected to be released to federal custody shortly after his sentencing.  (*Id.*).  According to Felton, however, he received a 14-month extension of his parole sentence for no apparent reason, and he believed that the extension was because the state never received his federal sentencing information.  (*Id.*).  It was not until October 4, 2019, that Felton was released to federal custody to begin serving his federal sentence.  (*Id.*).  Felton is currently serving his federal sentence at FCI Beckley in West Virginia.  (*Id.* at 7).  The Bureau of Prisons ("BOP") estimates Felton's release date as July 9, 2022.  *Inmate Locator*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited Aug. 23, 2021) (BOP Registration Number 71222-050).

Last year, Felton submitted a request for compassionate release to the warden at FCI Beckley, which was denied on June 2, 2020.  (D.E. No. 34-4, Exhibit D to Motion).  More recently, on February 5, 2021, Felton's counsel submitted a request for a reduction in sentence on Felton's behalf to the warden.  (D.E. No. 34-3, Exhibit C to Motion).  On May 5, 2021, Felton filed the present Motion seeking a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A).[1]  Felton argues that the COVID-19 pandemic and a variety of additional factors—such as his time served, his

---

[1]     Prior to these events, in November 2020, the Court received a letter from Felton in which he requested a decision on his habeas petition that is currently pending before the Court.  (D.E. No. 31).  Felton also requested that the Court put him on home confinement, explaining that all of the programs he could participate in were on hold because of the COVID-19 pandemic.  (*Id.*).  Although the precise relief sought in that filing was somewhat unclear, the letter was docketed as a *pro se* motion for compassionate release (in addition to being docketed as a letter in Felton's civil habeas case).  The filing triggered a response from the Federal Public Defender's Office, which informed the Court via email that it could not represent Felton due to a conflict of interest.  As a result, out of caution, the Court appointed CJA counsel to assist Felton with his motion.  (D.E. No. 33).  Counsel then filed the instant Motion.

rehabilitative efforts, unanticipated additional time served in state custody, and the nature of his underlying convictions—constitute extraordinary and compelling circumstances that justify reducing his sentence to time served and imposing a condition of home confinement for a time equivalent to that remaining on his sentence. (*See generally id.*). The Government filed its opposition to the Motion on June 2, 2021.

On July 1, 2021, the Court held oral argument on the Motion. (D.E. No. 41).[2] The Court was particularly interested in hearing argument on (1) the Court's authority to determine what constitutes extraordinary and compelling circumstances beyond those listed in the Sentencing Commission's policy statement; and (2) the factual basis for Felton's continued incarceration in state custody, beyond his initial 12-month future eligibility term. At the time of oral argument, the parties did not have a documented explanation for the 14 months Defendant served in state custody beyond his initial 12-months. Moreover, during oral argument, defense counsel discussed a new development—that Felton's eleven-year-old son (referred to herein as "J.F.") was diagnosed with B-cell acute lymphocytic leukemia in late June 2021. At the conclusion of oral argument, the Court instructed the parties to gather more information about these two issues. And on July 9, 2021, based on the new information, the Court ordered supplemental briefing on the Motion (D.E. No. 42), which was completed on July 19, 2021. (D.E. Nos. 45 ("Def. Supp. Br.") & 47 ("Gov. Supp Br.")).

## II.    LEGAL STANDARDS

Once a term of imprisonment has been imposed, the Court may modify it only under very limited circumstances. *In re Morris*, 345 F. App'x 796, 797–98 (3d Cir. 2009) (citing 18 U.S.C. § 3582(c)). Relevant here, 18 U.S.C. § 3582(c)(1) provides that in any case:

---

[2]      Before holding oral argument, the Court held a telephone conference with counsel to preview the issues to be discussed at oral argument. (D.E. No. 40).

> (A) the court, upon motion of the Director of the Bureau of
> Prisons, or upon motion of the defendant after the defendant has
> fully exhausted all administrative rights to appeal a failure of the
> Bureau of Prisons to bring a motion on the defendant's behalf or the
> lapse of 30 days from the receipt of such a request by the warden of
> the defendant's facility, whichever is earlier, may reduce the term of
> imprisonment (and may impose a term of probation or supervised
> release with or without conditions that does not exceed the unserved
> portion of the original term of imprisonment), after considering the
> factors set forth in section 3553(a) to the extent that they are
> applicable, if it finds that--
>
>> (i) extraordinary and compelling reasons warrant such a
>> reduction;
>>
>> [. . .]
>>
>> and that such a reduction is consistent with applicable policy
>> statements issued by the Sentencing Commission . . . .

The United States Sentencing Commission has promulgated a policy statement—the applicability of which is questionable and discussed in more detail below—that allows a court to grant compassionate release or a sentence reduction where: (i) extraordinary or compelling reasons warrant a reduction in a defendant's sentence; (ii) the defendant is not a danger to the safety of others or to the community; and (iii) release from custody complies with the § 3553(a) factors. *United States v. Brummett*, No. 07-0103, 2020 WL 1492763, at *2 (E.D. Ky. Mar. 27, 2020) (citing U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 1B1.13 (U.S. Sentencing Comm'n 2018)).

A defendant bears the burden to demonstrate that he or she is entitled to a sentence reduction. *See, e.g.*, *United States v. Epstein*, No. 14-0287, 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020).

## III.    ANALYSIS

### A.    Exhaustion

Before proceeding to the merits of a motion for a reduction in sentence, a defendant must meet § 3582(c)(1)(A)'s exhaustion requirement, which requires that the defendant has exhausted all administrative remedies, or that, since the submission of a request to the warden, 30 days have passed without a decision being rendered.  *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

At oral argument, the Government conceded that Felton satisfied this exhaustion requirement by submitting a request for compassionate release to the warden at his facility more than thirty days prior to his filing the Motion.  (Transcript of July 1, 2021 Oral Argument ("OA Tr.") at 4:23–5:2).  The Court thus turns to the merits of the Motion.[3]

### B.    Extraordinary and Compelling Circumstances

Before Congress passed the First Step Act, it directed the Sentencing Commission to define the "extraordinary and compelling reasons" standard.  *United States v. Alexander*, No. 19-0032, 2020 WL 2507778, at *3 (D.N.J. May 15, 2020).  The Sentencing Commission issued a policy

---

[3]    Because J.F.'s diagnosis occurred in late June 2021, Felton did not—and could not—have raised it as a potential basis for compassionate release in either in his 2020 letter to the warden, or in counsel's February 2021 letter to the warden.  Courts are split on whether a defendant must exhaust all issues he or she presents to the court in a compassionate release motion.  *Compare United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021) (holding that § 3582(c)(1)(A) requires issue exhaustion because, *inter alia*, a contrary holding would undermine the purpose of the provision—"to provide the Bureau with the information necessary to move for release on a defendant's behalf"), *and United States v. McNair*, 481 F. Supp. 3d 362, 366 (D.N.J. 2020) (collecting cases for the proposition that "district courts have disagreed over whether 'issue exhaustion' applies to motions under § 3582(c)(1)(A)" and concluding that issue exhaustion is required), *with United States v. Herrera-Genao*, No. 07-0454, 2021 WL 2451820, at *4 (D.N.J. June 16, 2021) ("[T]he Court agrees with other courts that have not required issue exhaustion under Section 3582(c)(1)(A).").  However, several Circuits have concluded that exhaustion is not jurisdictional and therefore may be waived or forfeited.  *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) (holding that although the exhaustion requirement is mandatory, it is not jurisdictional); *United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) (same), *cert. denied*, 141 S. Ct. 920 (2020); *United States v. Harris*, 989 F.3d 908, 911 (11th Cir. 2021) (concluding that the exhaustion requirement is not jurisdictional, but not opining on whether it is mandatory); *United States v. Saladino*, __ F.4th ___, 2021 WL 3376973, at *2 (2d Cir. Aug. 4, 2021) ("[L]ike many of our sister circuits, we conclude that § 3582(c)(1)(A)'s exhaustion requirement is not jurisdictional."); *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020) ("Failure to exhaust administrative remedies is an affirmative defense, . . . not a jurisdictional issue that the court must reach even if litigants elect not to raise it.").  Thus, it is insignificant whether issue exhaustion is required because the Government has waived the issue by not raising it, despite having the opportunity to do so at oral argument and in its supplemental brief.

statement in which an application note lists three specific circumstances that qualify as extraordinary and compelling. Generally, the enumerated circumstances include (i) a terminal illness or a serious medical condition that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover; (ii) the defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less; or (iii) certain family circumstances exist where the defendant would be the only available caregiver for his or her minor child, spouse, or registered partner. U.S.S.G. § 1B1.13, Application Note 1(A)–(C). In addition, the Sentencing Commission included a catchall provision, which provides that "other reasons" may be sufficient if "[a]s determined by the Director of the [BOP], there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in [the enumerated] subdivisions." *Id.*, Application Note 1(D).

However, because the Sentencing Commission has not updated its policy statement since Congress enacted the First Step Act (it lacks a quorum of voting members to do so), it does not by its explicit terms address defendant-filed motions for compassionate release, as opposed to motions by the BOP. Indeed, the policy statement continues with the introduction, "[u]pon motion of the Director of the [BOP] under 18 U.S.C. § 3582(c)(1)(A) . . . ." *Id.* § 1B1.13.

As a result, courts have considered two separate but related questions: (1) whether the policy statement is applicable (at all) to motions made by defendants; and (2) even if the statement is applicable, whether a court has discretion under the catchall provision to determine what constitutes extraordinary and compelling circumstances. Ultimately, both questions seek to answer the same question: whether the court can independently assess whether extraordinary and

compelling circumstances exist to warrant a sentencing reduction.

Most Circuits have addressed this question. The vast majority holds that the Sentencing Commission's policy statement does not limit the court's discretion to determine what constitutes extraordinary and compelling circumstances for a potential sentence reduction. *United States v. Brooker*, 976 F.3d 228, 237 (2nd Cir. 2020); *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020); *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021); *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020); *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021); *United States v. Maumau*, 993 F.3d 821, 836–37 (10th Cir. 2021). The Eleventh Circuit is, to date, the only Circuit to conclude otherwise. *United States v. Bryant*, 996 F.3d 1243, 1264 (11th Cir. 2021).

As of this writing, the Third Circuit has not weighed in. In the District of New Jersey, other judges have followed the majority approach. *United States v. Herrera-Genao*, No. 07-0454, 2021 WL 2451820, at *4 (D.N.J. June 16, 2021); *United States v. McCalla*, No. 11-0452, 2020 WL 3604120, at *3 (D.N.J. July 2, 2020); *see also United States v. Kantete*, No. 12-0388, 2021 WL 2709450, at *2 (D.N.J. June 30, 2021).

The Court finds the majority view persuasive and will evaluate whether Felton has shown extraordinary and compelling reasons for a sentence reduction beyond the confines of the policy statement. The Court does, however, find guidance in the policy statement. The Court also considers the plain meaning of the terms "extraordinary" and "compelling." Black's Law Dictionary defines "extraordinary" as "[b]eyond what is usual, customary, regular, or common." *Extraordinary*, Black's Law Dictionary (11th ed. 2019). It defines "compelling need" as a "need so great that irreparable harm or injustice would result if it is not met." *Compelling Need*, Black's Law Dictionary (11th ed. 2019). Finally, the Court also

7

considers the case law on what does and does not constitute extraordinary and compelling circumstances for purposes of a § 3582(c)(1)(A) motion.

Felton bases his Motion on a combination of factors that he says constitute extraordinary and compelling circumstances: (1) he is unable to protect himself from contracting COVID-19 while incarcerated; (2) he has served over a year of his sentence under the harshest and most restrictive conditions because of COVID-19; (3) he has been unable to participate in rehabilitative programs such as BRAVE, Challenge, and college classes because of course shutdowns over the pandemic, among other reasons; (4) his prior convictions are for marijuana offenses, which are no longer crimes in New Jersey, and the officers who searched his car would not be permitted to do so today; (5) he served an additional and unanticipated 14 months on his parole violation; (6) his eleven-year-old son has recently been diagnosed with leukemia; (7) he has served more than 70% of his sentence; and (8) he has undertaken remarkable post offense rehabilitative efforts. (Motion at 1–2; Def. Supp. Br. at 1–2). Although some of these reasons are unpersuasive, others are extraordinary and compelling and warrant a sentence reduction.

To start, Felton's COVID-19-related reasons for release are unpersuasive because they largely consist of generalized concerns about contracting the virus that causes COVID-19 and about the effects the virus has had on all prisoners. *See Raia*, 954 F.3d at 597 ("But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). Further, with respect to his fear of contracting the virus, Felton does not point to any particular medical condition that puts him at higher risk for severe illness if he were to contract COVID-19.[4] Nor does Felton point to

---

[4] Felton suggests that he is more at risk of severe illness from COVID-19 because he is a Black male. (Motion at 21). In response to a similar argument, another Judge in this District explained that "much of the commentary on

particularly alarming (current) statistics about infected persons at FCI Beckley. As of this writing, there is only one positive-tested inmate and no positive-tested staff at FCI Beckley. *See COVID-19 Cases*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Aug. 23, 2021). Additionally, to date, there are 191 fully inoculated staff members and 1006 fully inoculated inmates (out of a population of 1,559 inmates) at FCI Beckley.[5] *See COVID-19 Vaccine Implementation*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Aug. 23, 2021); *FCI Beckley*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/locations/institutions/bec/ (last visited Aug. 23, 2021). The three vaccines currently available have proven highly effective at preventing COVID-19 illness in those who have been fully inoculated, and they appear effective in preventing the spread of the virus at FCI Beckley. *See Different COVID-19 Vaccines*, CENTERS FOR DISEASE CONTROL, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines.html (last updated Aug. 19, 2021) (last visited Aug. 23, 2021).

Felton's arguments with respect to the circumstances of his arrest and his prior marijuana offenses are also unpersuasive. Even if such an inquiry is relevant, the Court is in no position to evaluate, based on the limited information currently before it, whether the officers could have

---

this issue focuses on the plethora of reasons including healthcare inequality and pre-existing health conditions which historically disproportionately impact African-Americans." *Carlos M. D. v. Anderson*, 460 F. Supp. 3d 535, 545 (D.N.J. 2020). Felton's support for this argument similarly focuses on such disparities. (Motion at 21 n.24). However, Felton does not persuasively link these social factors with his present situation as they relate to COVID-19.

[5]     The Government makes much of the fact that Felton has refused the vaccine. Other judges in this District (and elsewhere) have concluded that an inmate's denial of the COVID-19 vaccine weighs against a finding of extraordinary and compelling circumstances. *United States v. Johnson*, No. 13-00082, 2021 WL 3260847, at *3 (D.N.J. July 29, 2021); *United States v. Barragan-Zuninga*, No. 17-0452, 2021 WL 2859684, at *2 (D.N.J. July 8, 2021); *United States v. Nelson*, No. 18-300, 2021 WL 2253524, at *2 (D.N.J. June 3, 2021); *United States v. Fitzpatrick*, No. 19-357, 2021 WL 2201683, at *4 (D.N.J. May 28, 2021). The rationale articulated in these cases may well be persuasive here. Though, it is not entirely clear whether Felton may have had some medical or other reason for refusing the vaccine. (*See* D.E. No. 37 at 28 (ECF Pagination)). Regardless, as discussed *infra*, Felton's COVID-19-based arguments are unpersuasive for other reasons.

legally searched Felton's vehicle under today's legal standards.[6]  Regarding his prior offenses, Felton argues that three of his four prior convictions are no longer crimes under New Jersey law and that those crimes, which resulted in four criminal history points and an increased offense level, "will be vacated."  (Motion at 5).  Felton cites to the New Jersey Attorney General's interim guidance and directive regarding marijuana decriminalization, but he does not outline how exactly such guidance will apply to each of his prior convictions and has not made clear how any such guidance can or will affect his federal sentence.  Felton seems to suggest that today he would have a criminal history score of five (instead of nine) and a total offense level of 17 (instead of 21), resulting in a guidelines range of imprisonment of 30–37 months.  (*Id.* at 6); U.S.S.G. § 5A.  Even assuming this is true, however, Felton's 39-month sentence does not represent the type of "lopsided and disproportionately severe" sentence that other courts have found to form an adequate basis for compassionate release.[7]  *United States v. McDonel*, 513 F. Supp. 3d 752, 757 (E.D. Mich. 2021) (finding extraordinary and compelling circumstances where the defendant was serving a 107-year sentence but would face a mandatory sentence of 35 years if he were sentenced today for the same conduct because of a non-retroactive change to 18 U.S.C. § 924(c));  *United States v. Nafkha*, No. 95-0220, 2021 WL 83268, at *4 (D. Utah Jan. 11, 2021) (finding extraordinary and compelling reasons for a sentence reduction where defendant would receive 20 years today for his

---

[6]    Felton posits that the only reason the officers searched his vehicle was because of the odor of marijuana and that, today, marijuana odor alone is not enough to establish a reasonable articulable suspicion to initiate a stop or search.  (Motion at 5 & Exhibit M thereto).  There are, however, other facts in the Presentence Report ("PSR") that may be relevant to the officers' decision to search the vehicle, such as the area in which the officers observed the vehicle, Felton's visible nervousness, Felton's use of a spray bottle in the vehicle before the officers approached, and the officers' observations of marijuana remnants inside the vehicle.  (PSR ¶¶ 7–9).  To be clear, the Court does not suggest the search would be lawful under today's legal standards.  Instead, the Court simply notes that Felton's argument ignores other available facts.

[7]    Also, in granting a variance at sentencing, the Court considered the circumstances surrounding the possession with intent to distribute charge, which was the offense that resulted in an increased offense level.  (Sentencing Tr. at 5:22–6:4, 6:17–12:9 & 25:4–26:19).

10

§ 924(c) violations, compared to the 65 years he received for those violations).

Although the foregoing arguments are unpersuasive, the Court ultimately finds that certain of Felton's other reasons, in combination, provide the requisite extraordinary and compelling reason for a potential sentence reduction.

First is the issue of the unanticipated 14 months that Felton spent in state custody. As set forth above, Felton committed the underlying firearm offense while he was on parole for a prior state conviction. On October 11, 2017, before Felton was sentenced in federal court, his parole was revoked, and he was given a twelve-month future eligibility term for the violation. (D.E. No. 45-3 at 4 (ECF Pagination)). By the time Felton was sentenced in federal court on July 26, 2018, he had served nearly twelve months in state custody, and according to the PSR, Felton's then-current parole eligibility date was August 4, 2018. (PSR ¶ 31). However, Felton was not released to federal custody until October 4, 2019, approximately 26 months after he was taken into state custody and 14 more months than originally anticipated.

The Parole Board's decision is embodied in a "Notice of Decision" which shows that following Felton's initial 12-month term, the Parole Board considered whether to release Felton on parole. (D.E. No. 45-3 at 2 (ECF Pagination)). Ultimately, the Parole Board denied Felton parole and established an additional 14-month future eligibility term.[8] (*Id.*). According to the decision, the Parole Board determined that "there [wa]s a reasonable expectation that [Felton] w[ould] violate conditions of parole if released on parole." (*Id.*). Although there were some mitigating factors in Felton's favor, the Parole Board cited the following reasons for the denial: Felton's extensive prior offense record, the increasingly serious nature of his criminal record, the

---

[8]    Felton's maximum date on his state sentence is December 19, 2021. (*See* D.E. No. 45-3 at 4 (ECF Pagination)).

fact that he had already violated parole by owning a firearm, a risk assessment evaluation, and his "insufficient problem[s] resolution"—specifically, his lack of insight into criminal behavior, his unaddressed substance abuse problem, and the fact that his "actions and logic show him to continue to wish to live a life which puts him in criminal situations." (*Id.*). The Parole Board indicated that its conclusion with respect to Felton's insufficient problem resolution was demonstrated by an interview, documentation in Felton's case file, and "confidential material / professional report."[9] (*Id.*).

Felton argues that the Notice of Decision contains insufficient information to explain the additional 14 months Felton served in state custody.[10] Specifically, Felton points out that there is no indication that Felton was at the hearing or that he was permitted to testify, and that there is no hearing summary available. (Def. Supp. Br. at 3). Felton also highlights that Parole Board documents from 2017 (shortly after he was arrested for having a firearm) show that, at that time, aggravating and mitigating factors were in equipoise. (*Id.*; *see also* D.E. No. 45-3 at 4–7 (ECF Pagination)). Yet by October 2018, Felton explains, despite having no infractions and a favorable institutional adjustment, the aggravating and mitigating factors were no longer in equipoise. (Def. Supp. Br. at 3–4). Such a conclusion, Felton argues, is not supported in the Parole Board documents. (*Id.*).

The Court agrees that the Notice of Decision does not contain an elaborate or perfect explanation why the Parole Board decided to keep Felton in state custody for an additional 14

---

[9]     Felton's supplemental submission attaches two panel decisions dated October 12, 2018. (D.E. No. 45-3 at 2 & 3 (ECF Pagination)). One of the decisions is an "amended" decision. The only difference between the documents appears where the Parole Board indicates what sources support its conclusion regarding Felton's insufficient problem resolution. The amended decision cites one additional source (confidential material/professional report).

[10]     Felton initially argued that the additional 14 months served in state custody was the result of some inadvertence or mistake by the Parole Board because it never received Felton's federal sentencing information. (Motion at 4 & 25). Because the Notice of Decision dispels this theory, the Court addresses Felton's other arguments.

months.  But the panel decision provides the Parole Board's reasons for keeping Felton in state custody, even if it does so somewhat summarily.  And this Court is not in a position to second-guess the decision of the Parole Board some three years later.  Thus, this Court is not persuaded that the additional 14 months in state custody, *standing alone*, constitutes an extraordinary and compelling reason for a sentence reduction.

However, there is now the additional consideration of J.F.'s recent leukemia diagnosis.  As documented in two letters from medical doctors at Newark Beth Israel Medical Center, J.F. is newly diagnosed with B-cell acute lymphocytic leukemia and is undergoing medical treatment in the form of "intense chemotherapy and monitoring through blood transfusions and hospitalizations."  (D.E. Nos. 45-1 & 45-2).  J.F.'s treatments and procedures will depend on his blood counts and his responses to certain treatment, which means that planning may be unpredictable.  (D.E. No. 45-2).  According to one doctor, the treatment plan will require active parent involvement so J.F. can attend all appointments and receive appropriate emotional and psychological support.  (*Id.*).  J.F. typically resides with his mother, Quanesha Gibbs, in Pennsylvania.  (Def. Supp. Br. at 2).  At this time, however, J.F. is unable to reside with Gibbs because she lives further from the hospital where J.F. is receiving required medical treatment.  (*Id.*).  In addition, Gibbs must remain in Pennsylvania to care for her younger son.  (*Id.*).  As a result, J.F. currently lives with his paternal grandmother, Lavettie Felton (Felton's mother).  (*Id.*).  Lavettie Felton resides close to J.F.'s treating hospital, and—so far—has been able to take time off from work to attend and transport her grandson to his scheduled treatments.

The combination of the additional 14 months Felton spent in state custody and his son's diagnosis creates an extraordinary and compelling reason for release.  Although the Parole Board provided its reasons for an additional 14-month future eligibility term, this Court did not, at the

time of Felton's federal sentencing, have the benefit of considering the effect of those additional 14 months on the propriety of Felton's federal sentence.[11]  Instead, at the time of sentencing, the Court understood that Felton would be serving 12 months in state custody before being transferred to federal custody.  (PSR ¶ 31).  And the Court chose to run Felton's federal sentence consecutive to those 12 months.  If that occurred as expected, then Felton would have been transferred to federal custody on or around August 4, 2018, and, assuming good time credit, Felton would have been released from federal custody in or around May 2021 (and potentially to home confinement sooner).[12]  In other words, Felton has already been in custody for the length of time this Court decided was sufficient *but not greater than necessary* to further the purposes of sentencing.  The additional 14 months, then, goes beyond what the Court considered as sufficient but not greater than necessary in fashioning Felton's sentence.  And had Felton not served the additional 14 months, Felton could be out on supervised release and able to be present for his sick son.  The importance of J.F. having the full support of both parents as he overcomes his leukemia diagnosis cannot be understated.  J.F. is forced to live away from his mother and with his grandmother.  Upon release, Felton plans to reside with his mother and J.F. and will support J.F. physically and emotionally.  While J.F. is lucky to have his grandmother as his caretaker for the time being, there is no substitute for parent involvement in these circumstances.

The combination of the foregoing is extraordinary because it is "[b]eyond what is usual, customary, regular, or common," and it is "compelling" because it results in injustice.  Moreover, Application Note 1(C) of the Sentencing Commission's policy statement provides that certain

---

[11]     To be clear, the Court does not suggest that extraordinary and compelling circumstances exist any time new information is presented to the Court after a sentencing hearing that *could* have affected the sentence.

[12]     The May 2021 release date is calculated from August 4, 2018, assuming Felton would have served 85% of his 39-month sentence (33.1 months).  The BOP has discretion to consider an earlier release date to home confinement.

family circumstances involving minor children can provide extraordinary and compelling reasons for a sentence reduction. Although Felton's circumstances do not fit neatly within Application Note 1(C), there is at least support for the idea that the needs of a minor child constitute extraordinary and compelling reasons for a reduction either alone or in combination with other considerations. U.S.S.G. § 1B1.13, Application Note 1(C)–(D). And finally, although the vast majority of case law under this statute has related to the COVID-19 pandemic, other courts have found extraordinary and compelling reasons for a reduction based on a combination of compelling family circumstances and other factors. *See e.g.*, *United States v. Reyes*, No. 04-0970, 2020 WL 1663129, at *3 (N.D. Ill. Apr. 3, 2020) (finding extraordinary and compelling circumstances based on the length of defendant's sentence, the amount of time served, his rehabilitative efforts, and the need for Reyes to assist his family in caring for an aunt with stage four cancer); *United States v. Vargas*, 502 F. Supp. 3d 820, 830 (S.D.N.Y. 2020) (considering, *inter alia*, the defendant's unduly harsh sentence, his intention to care for his ailing, elderly mother, and COVID-19 as compelling reasons justifying a sentence reduction).

Based on the foregoing, Felton has met his burden of demonstrating an extraordinary and compelling reason for a sentence reduction.[13]

## C.    Section 3553(a) Factors

Section 3553(a) directs the Court to impose a sentence that is sufficient, but not greater than necessary, to further the purposes of sentencing, *i.e.*, the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and provide the defendant with needed educational training, medical

---

[13]    Felton suggests that the time he has already served and his rehabilitative efforts while incarcerated contribute to a finding of extraordinary and compelling circumstances. The Court agrees that these considerations ultimately weigh in favor of release but discusses them in connection with the § 3553(a) factors.

care, or other correctional treatment in the most effective manner. 18 U.S.C. §§ 3553(a)(1), (a)(2)(A)–(D).   Additionally, the Court must consider, *inter alia*, the nature and circumstances of the offense, the defendant's history and characteristics, the kinds of sentence available, and the sentencing range established for the applicable offense level committed by the applicable category of defendant. *Id.* § 3553(a)(1), (3), and (4).[14]

At Felton's sentencing, the Undersigned stated that "there is no doubt that the charge in question is a serious one," explaining that there are "too many dangerous things that can flow and follow from individuals carrying weapons in this country." (Sentencing Tr. at 32:13–14 & 34:4–8). The Court also believed that there was a need to promote respect for the law, noting that Felton was on parole when he committed the instant offense and pointing to his criminal history. (*Id.* at 34:12–35:14). In terms of deterrence, the Court believed that there was a need to specifically deter Felton with a significant sentence running consecutive to his parole eligibility term. (*Id.* at 35:19–22). The Court also concluded there was a need for general deterrence, citing to the high number of felon-in-possession cases in this District. (*Id.* at 36:3–5). With respect to protecting the public, the Court concluded that there was no need to protect the public from any violent acts. (*Id.* at 36:14–19). As to Felton's history and characteristics, the Court noted the death of Felton's father when Felton was four years old, Felton's otherwise stable home environment, and the fact that Felton finished high school and had employment history. (*Id.* at 36:35–37:18). The Court also noted that Felton seemed to have some history with marijuana abuse. (*Id.* at 37:25–38:4). The Undersigned stated that Felton showed "promise to become a productive member of our society." (*Id.* at 37:23–24). The Court ultimately concluded that Felton was deserving of a modest variance

---

[14]     Other considerations, which are not particularly relevant here, include any pertinent policy statement, the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offense. 18 U.S.C. §§ 3553(a)(5), (6) & (7).

below the guidelines range, and sentenced Felton to 39 months of imprisonment to be followed by three years of supervised release.  (*Id.* at 38:19–21).  The Court ordered Felton to participate in various programs, such as BRAVE or Challenge, ReNew, and life skills programs.  (*Id.* at 38:22– 40:1).

As outlined *supra*, at the time of sentencing, the Court understood that Felton would been transferred to federal custody on or around August 4, 2018, to begin serving his federal sentence. (PSR ¶ 31).  And had that been the case, Felton would have already been released from custody. In other words, Felton has already served the total amount of time the Court anticipated in concluding that a 39-month sentence (from on or about August 4, 2018) was sufficient but not greater than necessary to further the purposes of sentencing.

Nevertheless, Felton still has 10 months remaining on his *federal* sentence, and to grant Felton's Motion, the Court must consider whether reducing Felton's sentence by less than 11 months (based on his July 9, 2022 estimated release date) comports with the goals of sentencing embodied in § 3553(a).  The seriousness of the offense, the need to promote respect for the law, and the need to impose just punishment are still present here.  However, considering the significant time Felton has already served, which includes a substantial amount of time in state custody, releasing Felton now will not undermine these considerations.  Similarly, the Court finds that the substantial time Felton has served in both state and federal custody—and the fact that Felton served time in federal custody *in addition to* his state time for the underlying offense—will provide adequate deterrence, both to Felton specifically and to the general public.  As it did at sentencing, the Court also considers Felton's history and characteristics—including the fact that he completed high school, he has promising employment history, and he has a supportive family (including his mother and his partner, Quanesha Gibbs).  The Court also considers Felton's good behavior and

17

efforts at rehabilitation while incarcerated. Although Felton's access to rehabilitative programming has been severely limited by the COVID-19 pandemic, Felton has successfully completed 10 hours of training in job search skills, 10 hours of training in post-release preparation, and 10 hours of training in pre-release preparation. (D.E. Nos. 34-8 to 34-10 (Exhibits H, I & J to the Motion)). Felton also states that he completed a 40-hour drug program, although he was not able to obtain a certificate to show for it. (Motion at 32 & Exhibit K thereto). And it appears, based on the current record, that Felton exhibited good behavior while incarcerated. (*Id.* at 4, 9 & 34; D.E. No. 45-3). With respect to protecting the public, as it did at sentencing, the Court finds that there is no apparent need to protect the public from any violent acts by Felton. Although Felton does have other criminal history that concerned the Court at sentencing, the Court is satisfied that Felton's time in custody and the rehabilitative progress noted above has helped mitigate those concerns. Moreover, Felton will be placed on supervised release for three years, which will allow the Court to monitor Felton's behavior and check in as appropriate.[15] As a condition of his supervised release, Felton must participate in certain life skills and educational programs offered by U.S. Probation. (D.E. No. 27 at 3). The Court also strongly recommends, as it did at sentencing, that Felton participate in the Court's ReNew program. (*Id.*). Felton's access to these programs will help ensure a successful transition for Felton into society. Finally, the Court also considers the fact that Felton's original sentence represented a variance from his applicable guidelines range. Nevertheless, the Court finds that the initial variance was justified based on the reasons the Court provided at sentencing, and that the additional reduction is warranted for the

---

[15] The Court has considered the kinds of sentences available, including the imposition of a period of home confinement as a condition of supervised release. However, part of the reason the Court is releasing Felton is so that he can help care for J.F., and such care may necessarily include unpredictable travel to and from the hospital. Thus, while the Court recognizes a need for supervised release, it does not impose home confinement as a condition of such release.

reasons stated herein.  Under these circumstances, particularly in light of the time Felton has served, a below-guidelines sentence does not run counter to the purposes of sentencing.

In sum, after considering all of the relevant § 3553(a) factors and the significant amount of time Felton has already served, the Court concludes that the § 3553(a) factors, on balance, do not weigh against granting Defendant's motion for compassionate release.[16]

### D.    Release Plan

The Court also considers Felton's release plan.  Felton proposes that he be released to live with Lavettie Felton in Linden, New Jersey, where he will be able to provide physical and emotional support to J.F.  The United States Probation Office has conducted a pre-release investigation and has approved Felton's proposed residence.  Probation also indicated that Felton's mother appears to be a positive support for Felton, and she has agreed to assist Probation to ensure Felton's adjustment into the community is both positive and constructive.  The Court thus finds Felton's release plan satisfactory.

## IV.    CONCLUSION

For the foregoing reasons, Felton's Motion is GRANTED and his custodial sentence is reduced to time served.  All other portions of Felton's judgment remain in effect.  An appropriate Order accompanies this Opinion.

Dated: August 23, 2021                              /s/ *Esther Salas*
                                                    **Esther Salas, U.S.D.J.**

---

[16]    The Sentencing Commission's policy statement directed courts to evaluate the movant's dangerousness in addition to the § 3553(a) factors.  Although the Court has concluded that the policy statement is inapplicable, it has considered dangerousness.  Those considerations overlap with the Court's analysis of the § 3553(a) factors and do not weigh against release.